(C. D. 1911)

CASAVAN CARRARA MARBLE CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 27, 1957)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The parties to this action have stipulated that the involved merchandise consists of colored glass tile or tiling. The collector assessed the importation at 50 per centum ad valorem under paragraph 218 (f) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898, as articles of colored glass, not cut or engraved. The importer claims that the merchandise is properly dutiable at 15 per centum ad valorem under the provisions of paragraph 231 of the tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, as opal glass tile or tiling.

The plaintiff placed in evidence samples of glass tile which, with the exception of color, are identical to the imported merchandise (plaintiff's collective illustrative exhibit 1) and, in addition, a chart illustrating the range of colors of glass tile imported by the plaintiff (plaintiff's illustrative exhibit 2). However, neither side offered in evidence any exhibit which both parties would agree to be opal glass tile. There is, therefore, before the court no sample which can be taken as a true criterion for determining the characteristics of opal glass.

The only witness who testified in the case was Paul R. Casavina, president of the plaintiff corporation. While Mr. Casavina has had considerable experience in the importation and distribution of glass tiles, yet his basic training was in engineering and not in the field of chemistry or glass tile manufacturing. There was, therefore, considerable confusion in Mr. Casavina's testimony as to what is and what is not opal glass and opal glass tile. For example, when asked specifically "What is opal glass?" he replied:

It is an iridescent milky effect which has suspended crystals. These individual molecules or crystals throw out light. It has a consolidation in order to obtain opal glass, which is manufactured; it has fluoride, silicon, zirconium, copper, traces of these properties.

CHIEF JUDGE OLIVER: Do you mean to tell the court that if you have a blue tile, a dozen different sizes or shapes of blue tile, that you can pick one tile up and say, this is an opalescent when it is simply blue in color and non-transparent?

THE WITNESS: Yes. It is in the method of manufacture.

CHIEF JUDGE OLIVER: So the color has nothing to do with it?

THE WITNESS: No. What obtains the color are the metallic oxides in the consolidation of it, the increasing or decreasing plus the silicas. (R. 24.)

The defendant introduced in evidence samples of tile similar to that imported by the plaintiff (defendant's collective exhibit B). Plaintiff's witness considered defendant's collective exhibit B to be opal glass and not "tiles composed of transparent glass into which some material has been placed or imbedded," but then agreed that

the samples in question could be "a transparent glass base containing some opaque or translucent particles" (R. 50–51). Mr. Casavina further testified as follows:

X Q. So then you couldn't distinguish an opal glass from a transparent glass with particles imbedded therein unless you knew what went into the manufacture?—A. Not particularly, no. * * *

\* \* \* \* \* \* \*

Judge Mollison: What are the determining factors or considerations which would enable you to determine whether a thing is opal glass?

The Witness: The determining factor is number 1, it has a three-dimension effect; it has a milky effect, and an iridescent effect.

Judge Mollison: What is a milky effect?

The Witness: It is anything that is a consolidation which looks like milk. (R. 52.)

Counsel for the importer, when asked to define opal glass, stated it is "that glass which has suspended in the mass small crystalline particles so that it will reflect or refract the light as it goes through, so that it becomes a milky or translucent piece of glass. It is not transparent, and it accomplishes that translucent element because of the suspension of small bits of fluorspar or cryolite, sulfates, in them, and that colored opal glass is the same thing except that they add oxides of metal to give the coloring to the glass." Counsel for the Government, in accepting that definition, made the following statement: "We think Mr. Glad is essentially correct, and it is a question of whether these particular items do come within that definition or description" (R. 3–5). The issue in the case, therefore, is, as the parties agree, "whether or not the imported tiles are composed of opal glass," and, to determine this question, it is essential that we find the meaning of the term "opal glass tile," as used in the tariff act. Apparently, this issue has never been decided either by the United States Customs Court or the court of appeals.

In the case of *Joseph H. Inwald Glass Co. et al.* v. *United States*, 48 Treas. Dec. 275, T. D. 41152, the merchandise was classified at 50 per centum ad valorem under paragraph 230 of the Tariff Act of 1922 as manufactures of glass, not specially provided for, and was claimed properly classifiable at 40 per centum ad valorem under paragraph 231 of the same act under the provision therein for "rods, opal glass in rods." The official samples of the merchandise consisted of slender sticks or rods of white or opal-colored glass. Certain other samples were received in evidence as "Exhibit A" and "Exhibit 1." The former was described as "a perfectly white rod of nontranslucent glass; in other words, opaque or impervious to light." Exhibit 1 was more of a milky white or bluish white than exhibit A. The importer, in the *Inwald Glass Co.* case, *supra*, testified that both exhibit 1 and exhibit A were of a white or opaque color and that commercially " 'what we

call opal, Exhibit A' costs a little more than Exhibit 1." One of the witnesses produced a sample of merchandise from the shipment in question, marked "Exhibit 2," which was very similar in color and translucency to exhibit 1, but more of a bluish white or skim-milk color. This witness testified that the sample in question was "opal glass cane," but that he would not call exhibit A opal but "Enamel or chalk white * * * because opal is slightly opaque, you can look through it, chalk white you can't."

The court, in the *Inwald Glass Co.* case, *supra*, held the involved merchandise dutiable under paragraph 231, as claimed. In so holding, the court stated:

> * * * This paragraph in very precise terms places opal and enamel glass tiles within its provisions. It does not distinguish as to color. It refers to opal glass rods as one generic term. If trade and commerce would prefer one glass opal rod a shade whiter for certain uses that fact would not take the article out of the class of opal glassware. The shade of difference in color apparently does but slightly, if any, increase the cost of manufacture. We think it is eo nomine provided for in paragraph 231. * * *

We find but little in this case to guide us in reaching a conclusion in the present situation.

Turning to dictionaries and technical treatises, we find the following definitions:

Webster's New International Dictionary, unabridged, second edition, 1956:

> **opal glass.** A translucent opalescent glass, much used for stained-glass windows and ornamental ware.

The same authority defines "opalescent" as follows:

> Reflecting an iridescent light; having a milky iridescence; opaline.

Chamber's Technical Dictionary:

> **opal** * * *
>
> \* \* \* \* \* \* \*
>
> **opal glass** (*Glass*). Glass which is opalescent or white; made by the addition of fluorides (e. g. fluorspar, cryolite) to the glass mixture.
>
> \* \* \* \* \* \* \*
>
> **opalescence** (*Chem.*). The milky, iridescent appearance of a solution or mineral, due to the reflection of light from very fine, suspended particles.— * * *

Hackh's Chemical Dictionary:

> **glass.** * * * **opal**–An opaque glass colored milky-white by calcium phosphate or bone ash. * * *

Encyclopedia of Chemical Technology, volume 7, 1951, page 185:

> **Colored glasses** * * *
>
> \* \* \* \* \* \* \*
>
> (c) *Colors produced by microscopic or larger particles* can be due to color of suspended particles, as in aventurine glasses. A common example of this type is

a copper ruby that has been too strongly heated or that contained too much copper and consequently had copper precipitated out in metallic flakes. Colorless, nonmetallic crystalline particles with indexes of refraction which differ from the base transparent glass yield translucent, milky-colored *opal* and *alabaster* glasses by their multiple scattering of light inside the glass. Opal glasses in very small thicknesses may impart a slightly reddish cast to the transmitted light while the latter do not. Such unusual internal structures in glass require not only alterations in the proportions of the common glass forming oxides but also need additional ingredients such as fluorides, chlorides, sulfates, phosphates, tin oxide, zirconium oxide, titanium oxide, antimony oxide, and the like. Fluorides, introduced as fluorspar or cryolite in the batch, are used most generally. Nearly all are sensitively dependent upon various heat treatments. Colored opal glasses are made by having the base transparent glass, in which colorless particles are precipitated, colored by metal oxides in solution.

Opal glasses now are used for diffused-lighting ware as well as for ointment jars, tableware, ovenware, table tops, wall panelling, and the like.

In "Modern Glass Practice," revised edition, by Samuel R. Scholes, pages 194–195, we find the following respecting opal glass:

The term, Opal glass, is often used to designate not only the true Opal glasses, but also other similar ones such as Opalescent and Alabaster glasses. * * *

\* \* \* \* \* \* \*

It is necessary to use special compositions and proper conditions to produce internal glass structures of the types described. Thus, the compositions not only require special quantitative relations of the commoner glass-making oxides but also the presence of additional constituents, such as: Fluorides, Chlorides, Sulfates, Phosphates; Oxides of Tin, Zirconium, Titanium, Antimony, etc. Of these, the glasses containing the fluorides are of the greatest commercial importance. They are usually produced by introducing Fluorspar or Cryolite into the glass batch. * * *

\* \* \* \* \* \* \*

The proper determination and control of the time-temperature relations of melting, working and cooling glasses of this type are of the greatest importance. This is essential during melting and refining because the fluorides are lost from the melt as the alkaline fluorides, hydrogen fluoride, and silicon tetrafluoride. When molten, these glasses are transparent, and only during the cooling do the inclusions separate out. * * *

From the foregoing definitions and discussions, it is quite apparent that not all colored glass tile may be classified as opal glass tile and that there are certain basic considerations in determining whether a given specimen is or is not an opal glass tile. Evidently, color is not the only determining factor. However, it appears that generally this type of glass is characterized by a milky white or milky iridescent appearance, which results from the presence of certain particles suspended in the glass. These suspended particles have the effect of scattering or diffusing light, which strikes the surface of the glass, generally giving it a translucent appearance. It is also evident from the authorities and the testimony herein that it is essential that the composition of the materials entering the "batch," from which the

glass is formed, be carefully supervised, and that the melting and cooling of the glass in a definite manner is of the greatest importance. In this connection, plaintiff's witness testified:

X Q. * * * if you melted a combination of ingredients which when cooled would give you an absolutely transparent glass, and you melted this material up, and you stirred in some sand or other particles which did not melt in the melt, and then you cooled them, would you have opal glass?

\*  \*  \*  \*  \*  \*  \*

A. No, you wouldn't.

X Q. You might obtain a clear glass tile with these specks imbedded in there?—A. On occasion, because the matrix was not properly mixed.

JUDGE MOLLISON: What would you have to put in as an additive to make opal glass out of this plain glass?

THE WITNESS: It would be according to the color. (R. 54–55.)

We have before us samples of the imported merchandise. After a careful examination of these exhibits, we find they do not conform to the definition of opal glass, as given by counsel for the importer and agreed to by the Government, nor do they disclose the characteristic properties of opal glass as found in authoritative sources.

Further, the testimony of plaintiff's witness as to the characteristics of opal glass is not conclusive for a finding that the imported glass tile is opal glass. For example, Mr. Casavina testified that opal glass contains small particles in suspension and that these particles are not visible to the naked eye, but only under microscopic examination, but then admitted that these are white particles in plaintiff's illustrative exhibit 2, which are visible to the naked eye (R. 57–58). While he testified, on direct examination, that color had nothing to do with determining whether a glass was opal glass, he subsequently stated, on cross-examination, that color does have an effect in determining whether a product is opal glass (R. 58). Furthermore, Mr. Casavina testified that certain tiles, designated as item No. 550 on plaintiff's illustrative exhibit 2, are opal glass, but then characterized the tiles as not being translucent, but "would be opaque" (R. 58). Plaintiff's witness agreed that one could not distinguish an opal glass from a transparent glass with particles imbedded therein, unless it was known what went into the manufacture of the product. However, no laboratory report or analysis of the imported tiles, establishing whether they are, in fact, composed of opal glass or merely of some opaque-colored glass, is in evidence.

On the basis of the record here presented, the plaintiff, in our opinion, has failed to discharge its burden of showing that the collector's classification is incorrect and of establishing the correctness of its claim that the imported merchandise is properly classifiable as opal glass tiles or tiling. The protest is, therefore, overruled. Judgment will be entered accordingly.