(C. D. 2571)

QUALITY MARBLE & GRANITE CO. ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 14, 1965)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*James F. O'Hara* and *Richard J. Kaplan*, trial attorneys), for the defendant.

Before WILSON and NICHOLS, Judges; NICHOLS, J., concurring; OLIVER, J., not participating

WILSON, Judge: The protests enumerated in the schedule attached hereto were consolidated at trial (R. 2) and cover three entries of merchandise consisting of various colored mosaic glass tiles. The collector classified the merchandise under paragraph 218(f) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, as articles, not specially provided for, composed wholly or in chief value of glass, carrying a rate of duty of 30 per centum ad valorem. The merchandise is claimed to be classifiable under paragraph 231 of the Tariff Act of 1930, as modified by T.D. 54108, as opal glass tiles, dutiable at the rate of 13½ per centum ad valorem.[1]

The pertinent provisions of the tariff act are as follows:

Paragraph 218(f) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, provides in part:

All articles (not including table and kitchen articles and utensils) of every description not specially provided for, composed wholly or in chief value of glass * * * colored * * *:

    *      *      *      *      *      *      *

    Other * * *_____ 30% ad val.

Paragraph 231 of said act, as modified by T.D. 54108, provides in part:

Opal, enamel or cylinder glass tiles and tiling_____ 13½% ad val.

[1] At the trial, plaintiffs moved to amend protest 58/25852 to read 12½ per centum ad valorem, the duty rate as of July 1, 1958. The entry papers reveal the entry date for this merchandise to be November 19, 1957, before the effective date of said rate reduction contained in T.D. 54108. In their brief, plaintiffs list only the 13½ per centum figure and *subsilentio* must recognize the ineffectiveness of the amendment.

At the trial, the plaintiffs introduced into evidence the testimony of one witness, plus exhibits 1 and 2. The defendant offered in evidence exhibits A, B, and C.

Plaintiffs' witness, Mr. William Blair, manager of the Quality Marble & Granite Co., testified that he had been familiar with the imported merchandise since 1955. Mr. Blair was responsible for ordering the tiles and did so according to their color numbers, as they appear on the color charts, plaintiffs' collective exhibit 1. The color charts which were received in evidence represent the various colored tiles produced in Italy by Vetricolor, the manufacturer of the imported merchandise. They contain representative samples of the invoiced tiles insofar as size, color, and thickness are concerned. (R. 4–5.)

At plaintiffs' request, and upon order of the court, the sample merchandise in collective exhibit 1 was submitted to customs laboratory for analysis to determine whether or not they were opal glass as provided for in paragraph 231. Concomitant with the court's order was the condition precedent that the plaintiffs abide by the results. (R. 6.)

When the trial reconvened, plaintiffs introduced exhibit 2, a New York Customs Laboratory analysis indicating that, of the 84 numbered tiles claimed by plaintiffs to be opal glass—69 were reported opal and 15 were reported merely colored glass. Plaintiffs rested. Whereupon the Government offered into evidence three prior customs laboratory analyses concerning representative samples of separate importations of various colored tiles, manufactured by Vetricolor, and identified by the same color numbers as shown in plaintiff's collective exhibit 1. They were received in evidence and marked defendant's exhibits A, B, and C. Plaintiffs waived objection to their inclusion, although questioning their relevancy. Exhibit A, reporting on a series of color numbers similar in comprehension to the report in exhibit 2, reflects a better than 20 percent conflict with the findings in said exhibit 2.

In their brief, plaintiffs contend that of all the reports in evidence only exhibits 2 and A are sufficiently comprehensive in relation to the color charts, collective exhibit 1, to be given any weight in deciding the issue before the court. Plaintiffs then proceeded, contra their trial objection of relevancy, to abandon their protests as to the color numbers wherein there exists an inconsistency in findings between the laboratory reports in exhibits 2 and A, as well as to those numbers found to be merely colored glass tiles as reported in exhibit 2. Of the original 84 numbers claimed in the consolidated protests to be opal glass tile, the plaintiffs thus abandoned their claim as to 29 of these. As to the remaining 55 numbers, plaintiffs argue that there can be no

dispute as to 52, since both laboratory reports in exhibits 2 and A confirm a finding of opalescence and such findings are not controverted by the reports in exhibits B and C. As to color numbers 844 and 1084, plaintiffs contend that, since they were reported as opal glass tile in exhibit 2 and were not mentioned in the other reports, they have made out a *prima facie* showing of classification under paragraph 231. Finally, as to color number 952, plaintiffs contend curiously enough that, although it was reported in exhibit A as colored glass tile, it was also reported in the same analysis as opal glass tile and, thus, should be considered as opal tile. Plaintiffs, therefore, maintain that 55 of the original 84 color numbers have been shown to be opal glass tile.

The Government argues that the plaintiffs have failed in their attempt to establish that the involved merchandise is opal glass tile for the following reasons: (1) That the plaintiffs have offered no testimony as to the composition of the merchandise in accord with the findings of the court in *Casavan Carrara Marble Co., Inc.* v. *United States*, 39 Cust. Ct. 97, C.D. 1911, wherein the criteria for determining what is opal glass tile was discussed and resolved; (2) that the record establishes that no relation exists between the composition or quality of the imported tile and its color number; and (3) that plaintiffs' sole basis of proof, namely, the laboratory report in exhibit 2, in light of the conflicting findings in exhibits A, B, and C, is both inconclusive and insufficient to establish that the quality of the invoiced merchandise is the same as the corresponding numbered samples contained in plaintiffs' collective exhibit 1.

The sole question in issue here involves plaintiffs' burden of producing a preponderance of credible evidence to support their claim, and whether that burden has been successfully met from an examination of all the evidence affecting that burden. Commenting long ago on the obligations of proof, our court of appeals explained it this way in *United States* v. *Edson Keith & Co.*, 5 Ct. Cust. Appls. 82, T.D. 34128:

The burden of proof—that is to say, the obligation imposed by law on a litigant of establishing a fact by evidence—never shifts; but the duty of meeting or overcoming evidence in favor of or against any given contention may shift from one side to the other during the progress of the trial, according as the nature and weight of the proofs tend to support or controvert the fact or facts, the ascertainment of which is necessary for the proper judicial determination of the case.

In terms of the present litigation, the plaintiffs had the burden, imposed by law, of overcoming the presumption of correctness attached to the collector's classification. In so doing, plaintiffs came forward

with proof, exhibit 2, supporting their contention that the involved merchandise was as analysed, i.e., opal glass tile for all the imported color numbers except the 15 items reported to be colored glass only. Resting here, it can be said that the duty of meeting or overcoming this contention shifted to the Government. The Government argues that it has met this contention by the introduction of laboratory reports, exhibits A, B, and C, which, it claims, controvert the fact sought to be established by plaintiffs' exhibit 2.

The court fully agrees with the Government's position and finds that plaintiffs' proof has been controverted to the point that it remains inconclusive to establish the fact of opalescence for the invoiced merchandise.

In the *Casavan Carrara Marble Co.* case, *supra*, the court was faced with different elements of proof than exist here. However, in holding that the importer's proof in that case failed to discharge its burden, the court observed that opalescence depends not necessarily on the color, size, or thickness of the glass tile, but rather upon the composition of the materials entering into the batch from which the glass is formed. That to obtain the proper suspension of particles which will have the effect of scattering or diffusing light and which generally gives the article a translucent appearance, the batch process must be carefully supervised and requires great care in the melting and cooling of the glass.

Bearing this in mind, the record in this case, except to note that the imported articles are ordered solely by color number with no specification as to quality (R. 3–4), is silent on the question of compositional structure. This void in the evidence has not been filled by the results of the laboratory analyses. Standing alone, exhibit 2 indicates that the samples in collective exhibit 1, arranged according to color number, contain 69 opal items and 15 colored glass items. However, the results reported in exhibit A, which was an analysis of a different group of specimens manufactured by the same producer, presumably under the same conditions, and arranged according to the identical color numbers, reveal more than a 20 percent divergence with the findings recorded by exhibit 2. No reason for the inconsistency was advanced. If the reports had been harmonious, there would be strong support for the proposition that the analyses reflect a consistency in production methods for this imported tile. However, the very fact that random samples, analysed and reported according to chart number, reveal that the exact ordering numbers, when subjected to two samplings for analyses, show a significant variation in compositional structure, casts sufficient doubt upon the quality control of production for the entire shipments.

Moreover, such doubt is strengthened by the findings relating to color numbers 952 and 982. Exhibit A, the relevancy of which is recognized by plaintiffs, reports a finding of both opal and colored glass for each of these color numbers. Again, such difference in result must depend upon the quality of composition of the exact specimen analysed. Contrary to the conclusion adopted in plaintiffs' brief, such obvious inconsistencies impugn even a greater degree of doubt to plaintiffs' underlying contention.

By abandoning the protests as they apply to 29 of the original 84 items claimed to be classifiable under paragraph 231 as opal glass,[2] plaintiffs, as pointed out in defendant's brief, are unable, thereby, to isolate the effect of the findings occasioning such abandonment from the common question of fact directed to the subject merchandise as a whole. *Ebeling & Reuss Company* v. *United States*, 37 Cust. Ct. 376, Abstract 60263. In the act of abandonment, plaintiffs admit that the results reported in exhibit A raise a question of doubt as to the consistency of the opalescence of the tile in conflict. That doubt, however, based upon the facts in this case, applies to the imported merchandise as a whole.

Plaintiff's proof is insufficient to establish the necessary qualitative connection between the sample merchandise examined in exhibit 2 and the invoiced merchandise covered by the consolidated protests. The burden of proof not having been met, the collector's classification remains in effect. The protests are, therefore, overruled and judgment will be rendered accordingly.

### CONCURRING OPINION

NICHOLS, Judge: I concur in the decision of the court. However, in view of plaintiffs' ultimate position and the court's findings, I would like to point out what appears to me a likelihood that these shipments are commingled merchandise dutiable at the highest rate applicable to any part under section 508, Tariff Act of 1930, as amended by the Customs Simplification Act of 1953, 67 Stat. 518 (19 U.S.C., section 1508). The evidence seems to indicate that, to determine the correct classification of individual items, customs officers would have had to send the entire shipments, not just samples, to the laboratory. This is what section 508 excuses them from doing. The matter need not be pursued further in view of the result reached on other grounds, and the possible application of section 508 was not briefed, nor was evidence introduced that related to it. If the division had reached the opposite conclusion, outside section 508, I would have wanted to have section 508 considered in depth and applied if found applicable.

---

[2] For the sake of consistency, albeit here it applies to reasoning, not production, the addition of color numbers 952 and 982 bring the total to 31 or just under 40% of the original number protested.